UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DENISE BRYANT, | : | Bankruptcy No. 04-17225DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the Debtor's Objection to Proof of Claim filed by LaSalle National Bank as Trustee for Ocwen Federal Bank ("Claimant"). An evidentiary hearing was held at which the debtor Denise Bryant ("Debtor") provided the sole testimony. The parties have submitted post-hearing memoranda of law, and the matter is ripe for decision.

**BACKGROUND**

In January 1979 Debtor entered into a mortgage (the "Mortgage") on residential real estate located at 1341 E. Mount Pleasant Avenue, Philadelphia, PA (the "Property") to secure a note in the principal amount of $29,500 payable in monthly installments of $292.35 through March 2010. Exhibit C-1. Claimant is the successor in interest to the United States Department of Housing and Urban Development ("HUD"), the original mortgagee and holder of the note.

Debtor made payments under the mortgage until 1983 when she was laid off. After the expiration of a forbearance period of one year, she made payments erratically between 1984 and 1994. On September 23, 1994 Debtor filed a case under Chapter 13. In that case (the "1994 Case"), Debtor filed a Chapter 13 plan (the "Plan") that provided monthly payments of $850 for sixty months to be distributed by the Chapter 13 trustee. It stated with respect to Claimant's debt that "[h]olders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows:"

> "Bal Paid in Full------$41,471.59-HUD Loan Management: 1341 E. Mt. Pleasant Ave. The Debtor intends to RETAIN."

Exhibit D-4.

Debtor's Schedule D listed Claimant as holding a secured claim in the amount of $41,000. The Debtor's list of current expenses did not include a current home mortgage payment or insurance but included $215 per month for taxes. Exhibit D-3. The Plan was confirmed on March 14, 1995 without any objection by Claimant. The following day, March 15, 1995, Claimant filed a secured claim in the amount of $67,736.17 with arrearages stated as $41,471.59, the exact amount contemplated to be paid under the Plan. Exhibit C-3. Claimant did not attend the § 341 meeting held in this case. On January 20, 1999 Claimant filed a motion for relief from stay but withdrew it by praecipe before the scheduled hearing. Exhibit D-5. On July 14, 1999 the Trustee filed his Final Report, and the Debtor received her discharge on August 31, 1999. Id.

Testifying that she believed from discussions with her attorney that he had filed a total debt plan on her behalf, Debtor contends that Claimant was paid in full upon her discharge. Accordingly, Debtor made no further payments on account of the mortgage to Claimant. In anticipation of the completion of her plan, she left her job to care for her son. She has made no current payments on account of property taxes or hazard insurance since 1999.

Debtor had heard nothing from Claimant for almost five years when she received a series of letters in furtherance of a foreclosure action. To prevent this occurrence with respect to the Property, she filed this second Chapter 13 case on May 24, 2004.[1] Claimant responded by filing a secured proof of claim (the "POC") in the amount of $44,224.69 consisting of monthly payments of $16,856.30, late charges of $678.02, escrow advances of $6,802.99, fees and costs of $2,609.76 and securitized interest arrearage of $17,178.62.

Debtor objects to the POC on a number of grounds. First, she contends that she filed a total debt plan in her 1994 Case, the mortgage loan was paid in full upon her discharge at its conclusion, and to the extent that Claimant asserts otherwise, it is barred by the *res judicata* effect of the confirmation order from making a further claim other than for the post-confirmation advances for taxes and insurance made by Claimant. Alternatively, if the POC is not barred either by the prior discharge or because the claim Claimant filed in the 1994 Case was untimely, Debtor objects to the amount of all but the "escrow advances" and

---

[1] Query whether a second Chapter 13 case can be filed to determine the effect of the prior confirmation order. However, since this issue has not been raised, it will not be addressed further. Nor does this contested matter address the proper treatment of the allowed claim under Debtor's second Chapter 13 plan.

fees, costs and property preservation expenses and contends that Claimant failed to meet its ultimate burden to sustain this portion of its claim.[2]

In response, Claimant contends that Debtor filed an arrears plan to which she is bound, and could not have believed the mortgage to have been satisfied when Claimant was paying the taxes and forced place insurance for almost five years. Moreover it contends that notwithstanding its failure to object to the Plan, it filed a timely proof of claim in the 1994 Case to which the Debtor did not object. Claimant states that the Trustee was entitled to rely on the proof of claim, as an allowable claim, to pay off the arrears as he did consistent with the Plan.

**DISCUSSION**

**I.**

In In re Szostek, 886 F.2d 1405 (3d Cir. 1989), the Third Circuit Court of Appeals held that absent fraud, the provisions of a confirmed Chapter 13 plan bind the debtor and each creditor whose claim is provided for thereunder. A secured creditor which fails to object to confirmation will be deemed to have accepted the plan. Thus, the failure of the Szostek's plan to provide for payment to a secured creditor of the present value of its claim as required by § 1325(a)(5)(B)(ii) did not constitute grounds for vacating the confirmation order where the creditor with notice of the plan terms had not asserted a timely objection. Id. at 1413.

---

[2] Claimant also argues that the "securitized interest charge" in the amount of $17,178.62 was imposed during the 1994 Case without notice and in violation of the automatic stay.

Szostek makes clear that plans that would not be confirmable due to provisions that do not conform to applicable law will nonetheless be given effect if an objection is not raised prior to entry of the confirmation order. In this case the appellate court noted the conflict between divergent bankruptcy policies and resolved it in favor of the policy of finality underpinning § 1327, which expressly provides for the binding effect of a confirmed plan. Id. at 1408-09. In so doing, it reviewed a series of court of appeals cases that upheld the binding effect of a confirmation order including one in which the court noted that "the creditor's treatment seemed "grossly unfair" because of a zero-payment provision where the debtor, a convicted embezzler, owed $17,000 to his employer. Nonetheless, the court concluded, if a creditor ignores the bankruptcy proceeding, he does so at his peril. Id. at 1410 (discussing Matter of Gregory, 705 F.2d 1118 (9th Cir. 1983)).

In the matter before me it seems likely that the amount of funds dedicated to paying Claimant under the Plan was insufficient to pay the debt in full. See Exhibit C-4.[3] However, Claimant did not object to the Plan. The plan is a contract which is enforced according to its terms. In re Barbosa, 236 B.R. 540, 555-56 (Bankr. D. Mass. 1999). The language of the plan is clear: "bal in full- $41,471.59." Where a contract is unambiguous, parol evidence

---

[3] The amount reserved in the Plan for Claimant being to the penny the amount claimed by Claimant as arrears in its post-confirmation proof of claim suggests that while it may have been Debtor's belief and intention to pay the debt in full, some lesser amount was paid. Nonetheless, Debtor claims that her former bankruptcy counsel (who was not called to testify) advised her that she was offering a full debt plan, and the amount paid is consistent with the amount reflected in her schedules. Moreover, while her mortgage loan did not mature until 2010 and no explanation was offered as to why she would have been pre-paying the debt, she was not foreclosed from so doing. The provisions of § 1322(b)(5) are discretionary, and rather than elect to cure, a debtor may choose to pay a long-term debt by accelerating the repayment period and paying it in full during the five years in which the plan is in effect. In the Matter of Chappell, 984 F.2d 775,780-81 (7th Cir. 1993).

-5-

will not be considered to vary its terms. E.g., Harley-Davidson, Inc. v. Morris, 19 F.3d 142, (3d Cir. 1994). Under the holding in Szostek, Claimant is bound by the Plan, and the fact that the amount is incorrect to pay the claim in full as stated in the proof of claim filed post-confirmation would not compel a different result.

However, the fundamental principle that a creditor is bound by a confirmed plan to which it has not objected is tempered by notions of due process. Szostek, 886 F.2d at 1410 (distinguishing a case in which the creditor was not aware of the clause in the plan which limited its rights because it had not been included in the notice). See also In re Ramey, 301 B.R. 534, 545 (Bankr. E.D. Ark. 2003) (citing cases). Due process concerns not only involve consideration of the notice provided of the plan's provisions but also whether the plan, as opposed to a contested matter or adversary proceeding, may be used to reduce a secured claim.[4]

---

[4] This issue arises most frequently in the cram down situation where the debtor utilizes the plan to value the collateral and therefore bifurcate the secured claim. Courts are divided over whether, as a matter of fundamental fairness, something more than a plan provision, i.e., an adversary proceeding or motion under Rule 3012, must be utilized to effect a secured creditor's property rights. Compare Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98 (Bankr. D.N.J. 1993) (notice that debtor intend to cram down and avoid lien sufficient without adversary proceeding) with Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160 (4th Cir. 1993) (plan summary and court notice that failed to refer to intent to value secured claim pursuant to § 506 were inadequate to satisfy due process requirement). Claimant argues that the Plan seeks to modify its claim in violation of § 1322(b)(2) but I believe a more accurate description is that it provides for full payment, albeit of a smaller amount of debt. The dispute between Debtor and Claimant would normally be presented in a contested matter commenced by an objection to claim. Since Debtor did not seek to bifurcate the secured claim, I need not decide whether a plan confirmation hearing is sufficient to accomplish that end and afford Claimant its right to due process.

It is undisputed that Claimant was served with a copy of the Plan that clearly provides that the Claimant is being paid in full by this lesser sum.[5] As Claimant does not contend that it did not receive notice of the plan provision that it claims should not be given effect, its due process rights were not violated by lack of awareness of the Debtor's intentions as spelled out in the Plan. The second question, i.e., whether a secured claim can be reduced in a plan, could have presented a more difficult challenge for Debtor to overcome had Claimant filed a proof of claim prior to confirmation.

Notably the courts have reached divergent conclusions in cases where the binding effect of confirmation conflicts with the claims allowance process. The reported decisions have been grouped into three approaches: primacy of plan confirmation, primacy of claim allowance and primacy of confirmation conditioned on due process. In re Hudson, 260 B.R. 421, 434 (Bankr. W.D. Mich. 2001) (citing Eric S. Richards, *Due Process Limitations on the Modification of Liens Through Bankruptcy Reorganization*, 71 Am. Bankr. L.J. 64-101 (1997)). See also In re Basham, 167 B.R. 903 (Bankr. W.D. Mo. 1994) (discussing the three approaches).[6] The Hudson court reads Szostek as an indication that the Third Circuit

---

[5] In re Zdrok, No. 00-15497, an unpublished opinion I issued on May 31, 2001 which is cited by Debtor, is distinguishable. In that case, I rejected the debtor's position that the confirmed plan provided for full payment. Since the plan document was silent, I considered parole evidence, including the testimony of the Chapter 13 trustee, to conclude that it was an arrears plan. The Bryant plan is not ambiguous in its treatment of the Claimant's claim: it plainly states that the claim will be paid in full.

[6] The divergence of approach is partly attributable to the scheduling variations of holding confirmation hearings. In many districts, confirmation routinely occurs before the claim bar date to expedite distribution under the plan, and those courts have found some other method to reconcile the plan with the claims actually filed. See, e.g., In re Kincaid, 316 B.R. 735, 740 (Bankr. E.D. Cal. 2004) (While not required by the Bankruptcy Code or Rules to do so, Chapter 13 trustee prepares a notice of filed claims comparing to plan provisions and serves on debtor who is required to file a
(continued...)

advocates the primacy of plan confirmation over the claims allowance process. 268 B.R. at 434. However, it seems fair to conclude from <u>Szostek</u> and the nonprecedential <u>Kressler</u> decision, <u>see</u> n.8 <u>infra</u>, that the court's view of whether due process has been afforded will ultimately determine the resolution of the conflict.

Thus, while courts are in disagreement and the Third Circuit Court of Appeals has not directly addressed the issue, it appears that the better reasoned view is reflected in the third approach as articulated by the court in <u>Basham</u>:

> The Court finds that the third approach is the best approach. Looking to the contents of the notice to determine if the notice is reasonably calculated, under the circumstances, to apprise interested parties that their rights may be modified, is a flexible approach that encompasses the totality of circumstances presented in each case. Such approach allows the Court to consider a creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as, <u>that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation.</u>

<u>Id.</u> at 908 (emphasis added).

In applying that approach in this case, the dispositive fact is that the Claimant had not filed a proof of claim as of the date of the confirmation hearing.[7] At that time, the Claimant

---

(...continued)
proof of claim on behalf of any secured creditor if the trustee is to make distribution to that entity). Since secured creditors, who are not required to file proofs of claim, may wish to rely on their collateral and elect not to participate in the bankruptcy case, this procedure seeks to prevent the type of conflict that has given rise to this contested matter.

[7] The fact that the proof of claim was filed after confirmation may explain why the Chapter 13 trustee did not object to confirmation as he generally does when the plan and proof of claim diverge. Apparently the Chapter 13 trustee was comfortable making distribution to a secured creditor provided for under the plan. <u>Compare</u> <u>In re Jurado</u>, 318 B.R. 251, 255 (Bankr. D. P.R. 2004) (Administrative Order required debtor to file proof of claim for any creditor dealt with in the plan that had not done so itself at least 15 days prior to confirmation. As no proof of claim was filed, creditor had no allowed claim and was not entitled to distribution from the trustee notwithstanding having been provided for in the plan.) Indeed the trustee would have had no reason
(continued...)

had not become involved in the Chapter 13 case: it did not attend the § 341 meeting, it withdrew the motion for relief it filed and by failing to file a proof of claim, had placed no reliance on the claims allowance process. Even more significantly, to the extent Debtor could have been required to file a claim objection on notice and hearing in order to reduce the amount of the claim, Claimant had filed no claim to which an objection could have been lodged.

In Fili v. Pappalardo (In re Fili), 257 B.R. 370 (BAP 1st Cir. 2001), the court considered a case presenting similar facts. The Debtor filed a Chapter 13 case on October 25, 1999 and properly served his Chapter 13 plan and amended plan on the secured creditor Factors Funding Co. ("Factors"), both of which provided that Factors' claim was discharged and no distribution would be made in respect to it. Factors did not object to the plan or amended plan, and the amended plan was confirmed on January 24, 2000. Factors filed a proof of claim after plan confirmation but in advance of the February 17, 2000 bar date established in the notice promulgated by the court clerk. Factors argued, much as Claimant here, that its proof of claim is presumed valid until an objecting party rebuts its *prima facie* case. Since the deadline for filing a proof of claim had not expired before confirmation, the plan provision extinguishing the claim could not prevail. Rather, Factors

---

(...continued)
to note the disparate views of the parties as to what was being paid under the Plan. As noted by the Szostek court, the bankruptcy court and trustee have an independent duty to examine a plan for compliance with the Bankruptcy Code even though no objections are lodged, but that duty precedes confirmation and does not ameliorate the affirmative duty of the creditor to protect its claim. 886 F.2d at 1414.

contended that the timely proof of claim, albeit filed post-confirmation, was *prima facie* valid and liability on the claim could not be determined against it without a meaningful objection and an evidentiary hearing. Id. at 372.[8]

The bankruptcy appellate panel disagreed, concluding that the plan was confirmed only after notice and an opportunity for the Factors to be heard, the notice was adequate and not challenged as deficient in any way, and the plan clearly disclaimed any liability to Factors. Thus:

> Factors was not free blithely to forgo its full and fair opportunity to object to the plan's plain terms. Even if issues relating to Fili's liability could not be resolved through a plan confirmation contest, . . . Factors ignored the plan confirmation process and its opportunity to object to confirmation, at its peril.

Id. at 372. Citing to, *inter alia*, Szostek, the court noted that "[p]lan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality." Id. at 373. It distinguished cases such as Piedmont Trust Bank v. Linkous (In re Linkous), 990 F.2d 160 (4th Cir. 1993), where the confirmation notice was later deemed insufficient to apprise the creditor of the need to object, and In re Grogan, 158 B.R. 197 (Bankr. E.D. Cal. 1993), where the plan generally set amounts to be distributed and as such provided inadequate notice to the claimant. Finally, the Fili court distinguished this court's decision in In re Kressler, 252 B.R. 632 (Bankr. E.D. Pa. 2000) where the court held that a debtor may

---

[8] Fili concluded that a post-confirmation timely claim yielded to a contrary confirmed plan. Here the parties dispute the timeliness of Claimant's filed proof of claim, an issue I need not reach since I conclude that the result would be the same as in Fili whether the claim was timely and allowed or untimely and disallowed.

-10-

not effect a cram down through the plan confirmation process because unlike Factors and Claimant here, the creditor in Kressler had objected to confirmation.[9]

Fili stands for the proposition, which I adopt here, that a creditor with timely and unambiguous notice that its claim will be compromised and discharged may not ignore the confirmation process and fail to object notwithstanding that there either is no bar date for filing a claim or the time for filing a claim has yet to expire. "Confirmation of such a plan, after notice and opportunity to be heard, bars the creditor's later-filed claim under principles of res judicata." 257 B.R. at 374.

Thus, Debtor is correct that Szostek precludes a challenge to the treatment of Claimant's claim after confirmation. However, the significance of this conclusion is not dispositive by itself of the current post-discharge dispute between the parties. It is true that after the confirmation order became final, Claimant could not demand greater payment under the Plan than $41,471.59. That only means that so long as Debtor was performing her obligations under the confirmed Plan, Claimant could not seek any different treatment even had it realized that Debtor's Plan incorrectly described its debt. However, after payments

---

[9] On appeal, the Third Circuit Court of Appeals in a non-precedential opinion held under the facts of that case that the debtor must initiate some sort of adversary proceeding aside from the plan confirmation hearing in order to avoid a lien. In re Kressler, 40 Fed. Appx. 712, 2002 WL 1723885 (3d Cir. July 25, 2002). The Third Circuit panel distinguished Wolf, supra, 162 B.R. 98, where the court found no further affirmative step was required when "the creditor had not appeared at the confirmation hearing and thus was not only bound by the terms of the confirmed plan but had expressly waived any objection if it (the creditor) did not appear at the hearing." Id. at 714, 2002 WL 1723885. at *2. It observed that under the circumstances of Wolf, the Bankruptcy Court had held that the notice and hearing afforded the creditor satisfied due process and no further proceeding need have been commenced.

under the Plan were completed, § 1328 controls the nature of the discharge the Debtor received. It provides for "the discharge of all debts provided for by the plan" with certain exceptions not relevant here.[10] 11 U.S.C. § 1328(a).

Discharge of a debt under § 1328(a) does not depend on whether the creditor holds an allowed claim. If the debt is "provided for" in the Plan and absent any exception to discharge, it is discharged without regard to whether the creditor's claim was allowed or even if the creditor received distribution under the confirmed plan. 4 Keith Lundin, Chapter 13 Bankruptcy § 349.1, at 349-4 (4th ed. 2000 & Supp. 2004). Thus, the focus of my analysis is whether Claimant's debt was "provided for" by the Plan for only such debts may be discharged.

In Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187 (1993), the United States Supreme Court considered the meaning of "provided for" under a plan as used in § 1325(a)(5). It stated:

> The most natural reading of the phrase to "provid[e] for by the plan" is to "make a provision for" or "stipulate to" something in a plan. See, e.g., American Heritage Dictionary 1053 (10th ed. 1981) ("provide for" defined as "to make a stipulation or condition").

Id. at 473, 113 S. Ct. At 2192 (alteration in original). Concluding that the plan's establishment of a repayment schedule for the satisfaction of the arrearage portion of the

---

[10] One of those exceptions is where the plan treats a secured claim for long-term debt under § 1322(b)(5) by paying the arrears over the life of the plan. 11 U.S.C. § 1328(a)(1). In that case the mortgage debt that remains unpaid upon completion of the plan is not discharged. Because I find that the Plan was a full payment plan and Debtor did not avail herself of § 1322(b)(5), I reject Claimant's contention that this exception to lien discharge is applicable here. See Brief in Opposition to Objection at 6 (unnumbered).

-12-

secured claim met the "provided for" requirement, the creditor was allowed interest under § 1325(a)(5)(B)(ii). The Court found further support for its conclusion in § 1328, the section at issue in this case, and its analysis is instructive on that point:

> Other provisions of Chapter 13 containing the phrase "provided for by the plan" make clear that petitioners' plans provided for respondent's home mortgage claim. See United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (statutory terms are often "clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes [their] meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law") (citation omitted). Title 11 U.S.C. § 1328(a) (1988 ed., Supp. III), for example, utilizes the phrase "provided for by the plan" in dealing with the discharge of debts under Chapter 13. As used in § 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim. See 5 Collier ¶ 1328.01, at 1328-9.

Id. at 474-75, 113 S.Ct. at 2193 (alteration in original).[11]

Under the Supreme Court's plain language understanding of "provided for," there can be no question that Claimant's claim was provided for under the confirmed Plan. The Plan expressly mentioned it and set forth its treatment. I respectfully disagree with Clamant's conclusion that because the Plan allegedly did not state the claim amount correctly means that it was not provided for.[12]

---

[11] One court concludes from the Supreme Court's language that § 1328(a)'s "provided for by the plan" language may even be broader than that of § 1325(a)(5). Hudson, 260 B.R. at 437 n.32 (Bankr. W.D. Mich. 2001).

[12] The cases cited by Claimant do not hold otherwise. In In re Henline, 242 B.R. 459 (Bankr. D. Minn. 1999), the debtor treated the creditor's prepetition claim, which it had filed as secured, as unsecured contrary to the antimodification provision of § 1322(b)(2). The court stated:
> A creditor can lose its lien if the claim is treated as unsecured in a confirmed plan,

(continued...)

The confirmed Plan also dictates whether the lien that secures the debt will be discharged.[13] Section 1327(b) provides that confirmation vests all of the property of the estate in the debtor except as otherwise provided in the plan or confirmation order. Section 1327(c) provides that such vesting shall be free and clear of any claim or interest of any creditor provided for by the plan. 11 U.S.C. § 1327(b) and (c). Since a "lien" is a "claim" in a Chapter 13 case, Johnson v. Home State Bank, 501 U.S. 78, 111 S.Ct. 2150 (1991), whether a secured creditor's lien rights survive confirmation depends upon whether the plan "provides for" the lienholder. In re Jones, 238 B.R. 338, 344 (Bankr. W.D. Mich.

---

(...continued)
> even though the treatment might otherwise be impermissible under the Code. [citiations omitted] .... But, a lien is an interest in property protected by the due process guarantees of the Fifth Amendment to the United States Constitution. Threshold constitutional due process guaranties require the affected lienholder's participation in a proceeding that results in the taking of the lienholder's interest in property.

The court found that the creditor had not participated in the confirmation process because it, unlike Claimant, was not identified in the plan and the claim was not treated. Fleet Real Estate Funding Corp. v. Fewell (In re Fewell), 164 B.R. 153 (Bankr. D. Colo. 1993), is also distinguishable. There the court held that confirmation of a plan which substantially understated the mortgagee's prepetition arrearages did not preclude the creditor from collecting any shortfall in payment after the conclusion of the case, but the creditor had (1) filed an unchallenged proof of claim prior to confirmation which stated that it objected to confirmation because the arrears were incorrect and (2) the debtor failed to send a copy of the plan which evidenced the reduced payment to it. Thus, notions of due process dictated the results in this case as well.

[13] It is often stated that bankruptcy discharges personal obligations, not *in rem* obligations. Johnson v. Home State Bank, 501 U.S. 78, 84-85, 111 S.Ct. 773, 2154 (1991) (personal obligation under promissory note discharged but underlying mortgage survived). Accord Estate of Lelock v. Prudential Ins. Co. of America (In re Estate of Lelock), 811 F.2d 186, 189 (3d Cir. 1987) (valid liens that have not otherwise been disallowed or avoided survive the discharge of the underlying debt). However, "like most generalizations about law, the principle that liens pass through bankruptcy unaffected cannot be taken literally." In re Penrod, 50 F.3d 459, 462-63 (7th Cir. 1995). While a secured creditor can bypass his debtor's bankruptcy proceeding and enforce his lien in the usual way, the lien rights of a secured claim holder provided by the plan are defined by the confirmed plan. Lundin, supra § 231.1, at 231-7 and n. 22.

1999) (*citing* Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187 (1993)). Compare In re Lee, 182 B.R. 354, 388 (Bankr. S.D. Ga. 1995) ("If the Court determines that the secured creditor is 'provided for' in the plan, the secured creditor may not prevent property from revesting in the debtor free and clear."); with In re Glow, 111 B.R. 209 (Bankr. N.D. Ind. 1990) (plan's failure to refer whatsoever to any lien held by bank resulted in its ride through the bankruptcy case).

To be confirmed over the objection of a lienholder, the plan must provide for the the lienholder in one of the ways permitted under § 1322 or § 1325: (1) surrender of the lienholder's collateral, § 1322(b)(8), § 1322(b)(9); (2) curing the default and maintaining contractual payments during the life of the plan, § 1322(b)(3),(5); or (3) providing that the lienholder retains its liens and is paid in full. Lundin, supra at § 358.1, at 358-1. See Shook v. CBIC (In re Shook), 278 B.R. 815 (BAP 9th Cir. 2002) (by listing the CBIC debt as unsecured and not referring to it in the plan, secured claim was not provided for by any of the required methods and lien was not discharged).

In this case, the Plan purports to provide for Claimant's lien under the third alternative: Claimant's lien is retained and full payment of the debt is provided.[14]

---

[14] With respect to Claimant, the Plan states "the holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows: Bal paid in full." Claimant misreads the Plan when it argues that the lien retention language means that the lien will be retained after discharge. Claimant argues that this language evidences that its lien would survive since there is no statement that its lien would be satisfied upon completion of the Plan. While the better practice might be to include such an explicit statement in a plan, this argument is nonetheless unpersuasive and was expressly rejected in In re Echevarria, 212 B.R. 26 (Bankr. D. P.R. 1997), where the court noted that lien retention cannot mean that the lien exists forever irrespective of the payment of the
(continued...)

Had Claimant been vigilant and objected to the Plan as not providing for full payment, a contested matter would have resolved the amount of the secured claim. However, Claimant was silent, and the Plan was confirmed. Upon confirmation all lien rights were defined by the Plan and upon completion of the payments under the Plan in 1999, the identified debt, i.e., $41,471.59, was paid in full. Thus, the lien that secured that debt and which was retained for the life of the Plan did not survive the Debtor's discharge. "It follows as a matter of plain statutory construction that completion of all payments under § 1328(a) discharges liens provided for by the Chapter 13 plan." Lundin, supra, § 358.1, at 358-1. Accord Echevarria, 212 B.R. at 27; In re Hebert, 61 B.R. 44, 47 (Bankr. W.D. La. 1986).

## II.

The discharge of the claim and satisfaction of the lien securing the discharged debt only pertain to the obligation as of the confirmation date. Debtor acknowledges that she did not pay taxes or insurance in the post-confirmation period.[15] As the mortgage continued to secure the Debtor's obligations during this period, those debts remain as a secured claim

---

(...continued)
underlying obligation. The court held:

> This Court is of the opinion that a statement in a Chapter 13 payment plan providing for lien retention, only provides for lien retention until the debt is paid. The lien only exists to secure payment of the debt. Thus, liens only survive bankruptcy if the underlying claim is not provided for through the bankruptcy plan. In the present case, the debtor provided for, and paid in full, Doral's claim as filed. Therefore, the underlying lien should be extinguished.

Id. at 27. Needless to say, in this case, the Debtor paid the claim in full as provided for in the Plan to which, as noted, Claimant was bound under principles of *res judicata.*

[15] Debtor's sole objection to these costs is that they were not itemized, a deficiency remedied at the hearing.

against the Property. According to the attachment to the POC, there are fees, costs and property preservation expenses of $2,608.76 and escrow advances of $6,802.99. In support of this component of its claim, Claimant produced Exhibits C-4 and C-5 which were admitted into the record without objection. I have reviewed these documents and conclude that $9,768.51 representing the advances made after the filing of the 1994 Case for hazard insurance and taxes and $3,975.26 representing fees and expenses incurred during the same period were charged to this loan account. However, as the documented amount exceeds the proof of claim amount and no amendment was sought, I shall allow Claimant a secured claim in the amount of $9,411.75 representing the full amount claimed in the proof of claim with leave to file an amendment to the proof of claim to capture the balance of its costs.[16]

An Order consistent with the foregoing Opinion shall be entered.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:   April 19, 2005

---

[16] As these charges were incurred before the discharge of the lien at the conclusion of Debtor's 1994 Case, the mortgage was still available to secure the payment of these expenses. Debtor does not contend otherwise.

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| DENISE BRYANT, | : | Bankruptcy No. 04-17225DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 19th day of April 2005, upon consideration of Debtor's Objection to Proof of Claim ("POC") filed by LaSalle National Bank as Trustee for Ocwen Federal Bank ("Claimant"), after notice and evidentiary hearing, and for the reasons stated in the foregoing Memorandum Opinion;

It is hereby **ORDERED** that the Objection is **Sustained In Part**. Claimant is allowed a secured claim of $9,411.75 and granted leave to file by **May 6, 2005** an amended proof of claim consistent with the evidence and findings herein.

*Diane W. Sigmund*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

-2-

Copies to:

Stephen L. Axelrod, Esquire
117 South 17th Street
Suite 602-B
Philadelphia, PA 19103

Richard F. Stern, Esquire
STERN AND STRECHO
410 Benjamin Fox Pavilion
Jenkintown, PA  19046

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O.  Box 40119
Philadelphia, PA 19106-0119

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107